No. 17-15579

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**Patricia Fox, O.D.,**
*Plaintiff and Appellee,*

vs.

**Vision Service Plan,**
*Defendant and Appellant.*

---

On Appeal from a Preliminary Injunction
United States District Court for the Eastern District of California
E.D. Cal. No. 2:16-cv-2456-JAM-DB
The Honorable John A. Mendez

---

# APPELLANT'S REPLY BRIEF

---

**MANATT, PHELPS & PHILLIPS, LLP**
Andrew H. Struve
Benjamin G. Shatz
Adrianne E. Marshack
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
(714) 371-2500 • Fax (714) 371-2550

*Attorneys for Appellant*
Vision Service Plan

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................... 1

II.    ARGUMENT ......................................................................... 1

    A.    The courts lack jurisdiction because Fox failed to exhaust her contractual remedies .................................... 1

    B.    Fox failed to prove irreparable harm ............................ 3

        1.    The district court failed to follow this Court's holding in *Camping Construction* that participating in an arbitration is not irreparable harm ................................................... 3

        2.    Fox's "denial of a statutory right" argument is unsupported and unsupportable ........................ 5

        3.    Only monetary damages are at stake, so no irreparable harm exists ......................................... 8

        4.    Potential future Data Bank reporting provides no basis for finding current irreparable harm ................................................... 9

    C.    Fox Has No Likelihood of Success on the Merits .......... 9

        1.    Section 1300.71.38 does not apply to the FHP, nor does the FHP violate the regulation .............................................................. 9

            a.    The disputes covered by the FHP are not covered by Section 1300.71.38 .......... 10

            b.    VSP's FHP does not violate Section 1300.71.38 ............................................... 11

        2.    The Federal Arbitration Act preempts Section 1300.71.38 and no reverse-preemption exception saves the regulation ......... 13

            a.    Whether an activity is "the business of insurance" under McCarran-Ferguson is relevant to whether a law was enacted "for the purpose of regulating the business of insurance." ...... 15

i

# TABLE OF CONTENTS
## (continued)

**Page**

        b.    Section 1300.71.38 does not regulate VSP's performance of an insurance contract ...................................................... 16

        c.    Fox's "assignee"/"steps into the shoes" argument is unsupported and does not save Section 1300.71.38 from preemption ...................................... 19

    3.    Fox cannot show the FHP is unconscionable ..... 22

        a.    Fox cannot demonstrate the FHP is procedurally unconscionable ................... 22

        b.    Fox cannot demonstrate the FHP is substantively unconscionable ................. 25

  D.    The balance of hardships and public interest factors favor VSP ......................................................... 31

III.    CONCLUSION ...................................................... 33

# TABLE OF AUTHORITIES

## CASES

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    24 Cal. 4th 83 (2000) .................................................................... 28

*Baltazar v. Forever 21, Inc.*,
    62 Cal. 4th 1237 (2016) ........................................................ 23, 24

*Blue Cross of California v. Anesthesia Care Assocs.*,
    187 F.3d 1045 (9th Cir. 1999) ...................................................... 21

*Cal. Parking Servs. v. Soboba Band of Luiseno Indians*,
    197 Cal. App. 4th 814 (2011) .......................................................... 4

*Camping Construction Co. v. Dist. Council of Iron Workers*,
    915 F.2d 1333 (9th Cir. 1990) .............................................. 3, 4, 31

*Carmona v. Lincoln Millennium Car Wash*,
    226 Cal. App. 4th 74 (2014) ......................................................... 29

*Chalk v. District Court*,
    840 F.2d 701 (9th Cir. 1988) ................................................. 6, 7, 8

*Charles J. Rounds Co. v. Joint Council of Teamsters No. 42*,
    4 Cal. 3d 888 (1971) ....................................................................... 2

*Cheng-Canindin v. Renaissance Hotel Assocs.*,
    50 Cal. App. 4th 676 (1996) ................................................... 11, 12

*DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz.*,
    852 F.3d 868 (9th Cir. 2017) ........................................................ 21

*Dotson v. Amgen, Inc.*,
    181 Cal. App. 4th 975 (2010) ....................................................... 31

*Dr. Mark Lynn & Assocs. v. Vision Serv. Plan Ins. Co.*,
    2005 WL 2739160 (W.D. Ky. Oct. 21, 2005) ............................. 5, 6

*Exxess Electronixx v. Heger Realty Corp.*,
    64 Cal. App. 4th 698 (1998) ......................................................... 29

*Fredericksburg Care Co. v. Perez*,
    461 S.W.3d 513 (Tex. 2015) .................................................. 14, 18

*Group Life & Health Ins. Co. v. Royal Drug Co.*,
    440 U.S. 205 (1979) ............................................................... passim

*Herb Reed Enters. v. Fla. Entm't Mgmt.*,
    736 F.3d 1239 (9th Cir. 2013) ........................................................ 9

# TABLE OF AUTHORITIES
## (continued)

*Idaho v. Shoshone-Bannock Tribes*,
465 F.3d 1095 (9th Cir. 2006)........................................................ 28

*International Ins. Co. v. Duryee*,
96 F.3d 837 (6th Cir. 1996) ...................................................... 14, 18

*Johnson v. City of Loma Linda*,
24 Cal. 4th 61 (2000)....................................................................... 2

*Los Angeles Mem'l Coliseum Comm'n v. NFL*,
634 F.2d 1197 (9th Cir. 1980)........................................................ 8

*McKnight v. Chicago Title Ins. Co.*,
358 F.3d 854 (11th Cir. 2004)...................................................... 16

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011) .......................................................... 2

*PLCM Group v. Drexler*,
22 Cal. 4th 1084 (2000)................................................................ 30

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017).............................................. passim

*Rent-A-Center, West v. Jackson*,
561 U.S. 63 (2010) .......................................................................... 2

*Sanchez v. Carmax Auto Superstores Cal.*,
224 Cal. App. 4th 398 (2014)....................................................... 26

*Sanchez v. Valencia Holding Co.*,
61 Cal. 4th 899 (2015)............................................................. 26, 27

*SEC v. National Securities*,
393 U.S. 453 (1969) ...................................................................... 16

*Serafin v. Balco Props. Ltd.*,
235 Cal. App. 4th 165 (2015)....................................................... 24

*Smith v. PacifiCare Behavioral Health of Cal.*,
93 Cal. App. 4th 139 (2001).................................................... 15, 17

*Standard Sec. Life Ins. Co. v. West*,
267 F.3d 821 (8th Cir. 2001)....................................................... 16

*Topanga Press, Inc. v. City of Los Angeles*,
989 F.2d 1524 (9th Cir. 1993)................................................... 6, 7

iv

## TABLE OF AUTHORITIES
### (continued)

*U.S. Dept. of Treasury v. Fabe*,
  508 U.S. 491 (1993) ................................................................ passim

*Union Labor Life Ins. Co. v. Pireno*,
  458 U.S. 119 (1982) ................................................................ passim

*UNUM Life Ins. Co. v. Ward*,
  526 U.S. 358 (1999) ........................................................................ 15

*Westlake Cmty. Hosp. v. Super. Ct.*,
  17 Cal. 3d 465 (1976) ...................................................................... 2

*Wolsey, Ltd. v. Foodmaker, Inc.*,
  144 F.3d 1205 (9th Cir. 1998) .................................................. 12, 13

*Woodside Homes of Cal. v. Super. Ct.*,
  107 Cal. App. 4th 723 (2003) .................................................. 26, 27

## STATUTES & RULES

15 U.S.C. § 1012(b) .......................................................................... 15

Fed. R. Civ. Proc. 68 ........................................................................ 29

Cal. Civ. Code § 1670.5 ................................................................... 31

Cal. Civ. Code § 1717 ...................................................................... 29

Cal. Code Civ. Proc. § 998 .............................................................. 29

Cal. Health & Saf. Code § 1345(r) ................................................... 20

# I.    INTRODUCTION

This Court should reverse the preliminary injunction because Fox failed to exhaust her contractual remedies and failed to prove any of the necessary requirements: Fox has not demonstrated irreparable harm or a likelihood of success.

# II.    ARGUMENT

## A.    The courts lack jurisdiction because Fox failed to exhaust her contractual remedies.

VSP's first argument below and on appeal is that the courts lack jurisdiction because Fox must exhaust her contractual remedies before filing suit. (AOB-12-13; 2-ER-202-03.) Belying Fox's assertion that the district court carefully analyzed and decided "every issue VSP raised" (AB-14), the court ignored this argument entirely. Fox addresses this point in only a few sentences, expressing disdain for such a "nonsensical argument." (AB-18; 3-ER-299.) But tellingly, rather than cite to a single authority, Fox supplies only dismissive rhetoric, complete with an exclamation point. Punctuation is no substitute for precedent.

Fox agreed that binding arbitration "shall be the *sole method* … of resolving *any dispute*" with VSP, and that "[b]y this agreement and agreeing to binding arbitration" she waived her right to a jury trial "as to *any dispute* with VSP ...." (2-ER-110 [emphasis added].)

Fox's lawsuit disputes the legality of the Fair Hearing Procedure ("FHP"). Fox thus argues that the FHP applies only to disputes over the audit results, not to disputes about the "administrative procedure" itself. (AB-18.) But the contractual language precludes this argument: "Any dispute" means any dispute, including a dispute about the FHP's legality.

The law requires Fox to exhaust her contractual remedies, and her failure to do so is a jurisdictional defect. *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000); *Westlake Cmty. Hosp. v. Super. Ct.*, 17 Cal. 3d 465, 474-75 (1976); *Charles J. Rounds Co. v. Joint Council of Teamsters No. 42*, 4 Cal. 3d 888, 894 (1971). This Court is equally clear that courts should enforce contractual intent when it comes to arbitration provisions. *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011). Here, the plain language is that "any dispute" must be resolved by the FHP. Indeed, the FHP itself also provides that arbitration is the "exclusive authority" for resolving "any dispute" involving the FHP itself—its "interpretation, applicability, enforceability or formation." (2-ER-137.) This means that even questions about the validity or the enforceability of the arbitration clause itself are subject to arbitration, not court jurisdiction. *Rent-A-Center, West v. Jackson*, 561 U.S. 63, 68-69, 72 (2010). Thus, Fox must first pursue any grievances about the FHP within that process and may not sidestep the process and proceed directly to court.

### B. Fox failed to prove irreparable harm.

The district court recognized "the central issue" for granting preliminary injunctive relief was for Fox to establish irreparable harm. (2-ER-325; 1-ER-22; 3-ER-325.) But the court erred as a matter of law in finding Fox had met this burden.

### 1. The district court failed to follow this Court's holding in *Camping Construction* that participating in an arbitration is not irreparable harm.

The district court erred in finding irreparable harm if arbitration proceeded; that conclusion contradicts this Court's binding precedent of *Camping Construction Co. v. Dist. Council of Iron Workers,* 915 F.2d 1333, 1349 (9th Cir. 1990) ("*Camping*"), that it "is simply not the case" that "unnecessarily undergoing arbitration proceedings constitutes irreparable harm." (AOB-47-50; 1-ER-24.)

Fox excuses the district court's failure to follow precedent by arguing that "a split of authorities" exists about whether having to arbitrate constitutes irreparable harm. (AB-61-63.) But to create this alleged split, Fox relies on non-binding cases from other circuits, and a district court decision relying on those out-of-circuit cases.

Forced to distinguish *Camping*, Fox raises immaterial distinctions. Fox first argues that *Camping* "was decided under the Norris-LaGuardia Act, which severely restricts the jurisdiction of federal courts to issue injunctions in labor disputes." (AB-63.) Yet the

basis for *Camping*'s holding did not turn on that Act. *Camping,* 915 F.2d at 1349 ("Even aside from its failure to apply Norris-LaGuardia, the court was clearly in error [in finding that undergoing arbitration constitutes irreparable injury]").

Fox next argues that a collective bargaining agreement was determinative to *Camping*'s finding of no irreparable injury. (AB-63.) Fox is wrong. This Court held, as another basis for finding no irreparable injury, that because an arbitration award is not self-enforcing (but rather would have to be judicially enforced), an arbitration award "cannot by itself inflict anything like irreparable injury." *Camping,* 915 F.2d at 1349. That same rationale applies here. *Id.*; *see also, Cal. Parking Servs. v. Soboba Band of Luiseno Indians*, 197 Cal. App. 4th 814, 819 (2011).

Notably, Fox (and the district court) ignored *Camping*'s third reason for why participating in an arbitration is not irreparable harm: An adequate remedy at law exists. *Camping,* 915 F.2d at 1349. This rationale, like the two before it, does not depend on the Norris-LaGuardia Act or any collective bargaining agreement.

*Camping* resolved that participation in an arbitration that may prove unnecessary is not irreparable harm, as a matter of law. (AOB-47, 51.)

### 2. Fox's "denial of a statutory right" argument is unsupported and unsupportable.

Fox argues that another basis of irreparable harm is the "denial of a statutory right," citing an unpublished Kentucky decision, *Dr. Mark Lynn & Assocs. v. Vision Serv. Plan Ins. Co.*, 2005 WL 2739160 (W.D. Ky. Oct. 21, 2005). (AB-63.) Fox's argument is that because a California statute supposedly allows her to resolve her dispute with VSP "through a non-arbitration process," she is being deprived of a statutory right, which is irreparable harm. (AB-64.) But this is just a rephrasing of Fox's primary argument that VSP's FHP is illegal and so having to endure it is irreparable harm. Yet Fox does not rely upon any statute at all (she relies on a misreading of a regulation), and even had she cited a statute, this is not a new or different theory of irreparable harm.[1]

Nor is it a valid theory. The Kentucky case and Fox's other citations are distinguishable. *Lynn* questioned whether VSP had violated Kentucky's "Willing Provider" statute by terminating a provider without citing any objective standards that he failed to meet. *Lynn,* 2005 WL 2739160 at *2. In granting injunctive relief, the court

---

[1] Fox argues that this was a distinct basis for irreparable harm VSP failed to address. (AB-63-64.) Not so. The court's statement that an injunction is appropriate for a threatened statutory violation is, in this situation, the same argument that having to participate in an arbitration that may prove illegal constitutes irreparable harm, which VSP extensively addressed and refuted. (AOB-47-50.)

5

said that the "Willing Provider" statute "*clearly* applies"; that VSP intended to act "*clearly* contrary" to the statute; and that where "such a *clear* violation is evident, injunctive relief is appropriate." *Id*. *Lynn* also justified its injunction by noting that "without the injunction, Lynn Associates would probably lose a majority of its patients. It will be difficult, if not impossible, to calculate his monetary damages." *Id.* at *2. Here, unlike *Lynn,* the situation is not at all "clear." VSP challenges Section 1300.71.38's application to this dispute. Nor is it "clear" that, even if Section 1300.71.38 applied, the FHP violates the regulation, nor that Section 1300.71.38 survives preemption.

Moreover, unlike *Lynn*, an injunction will not affect Fox's practice. VSP terminated Fox from its network and stopped accepting out-of-network claims from her *over six months* before she sought preliminary relief. (3-ER-269.) Thus, with or without an injunction, Fox cannot submit claims to VSP. Nor will Fox's lawsuit even determine the merits of VSP's decision to terminate her from its network—it only will determine the validity of the procedure established for *reviewing* that decision. In other words, the harm in *Lynn* of a doctor losing patients without injunctive relief is not present here. *Lynn* provides no support for Fox's irreparable harm argument.

Neither does *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524 (9th Cir. 1993) or *Chalk v. District Court*, 840 F.2d 701 (9th Cir. 1988) support the proposition that irreparable injury arises

6

simply "from a loss of statutory rights." (AB-64.) *Topanga* concerned the deprivation of *constitutional* (not statutory, much less regulatory) rights, and noted in dicta that "any loss of *First Amendment freedoms*, even briefly, *can* constitute irreparable injury." *Topanga,* 989 F.2d at 1528 (emphasis added). But *Topanga* never even analyzed irreparable injury, because in the context of "location-restrictive ordinances," "a moving party *need not demonstrate that he risks irreparable injury*" to obtain a preliminary injunction. *Id.* (emphasis added). *Topanga* focused instead on a balance of hardships. Unlike the plaintiffs in *Topanga*, Fox *does* need to demonstrate irreparable injury. (1-ER-22, citing cases.) *Topanga* does not help Fox meet this burden.

In *Chalk*, a teacher was moved from teaching to administration because he had AIDS. The district court denied preliminary relief, reasoning that the teacher failed to demonstrate irreparable injury because he suffered no monetary loss. *Chalk,* 840 F.2d at 709. In reversing, this Court determined that the teacher had demonstrated a non-monetary loss—emotional injury from being prevented from doing a job that gave him "tremendous personal satisfaction." *Id.* This Court did not find irreparable harm based simply on the deprivation of a statutory right to be free from discrimination. *Chalk,* therefore, does not support Fox's argument.

More fundamentally, Fox's argument that "denial of a statutory right" constitutes irreparable harm is untenable. If that were the rule, irreparable harm could always be found whenever a party alleging a statutory violation could demonstrate a likelihood of success on the merits—collapsing two discrete elements into only one. That is not the law. *See Los Angeles Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200-03 (9th Cir. 1980) (preliminary injunction reversed despite plaintiff's likelihood of success on the merits, where plaintiff failed to establish irreparable injury).

### 3. Only monetary damages are at stake, so no irreparable harm exists.

Fox's complaint makes clear that this case is only about money. As Fox describes it, she disputes "that VSP is entitled to recover all monies paid to the office for patients examined by individuals employed by Dr. Fox"; she disputes being "overpaid"; and she disputes the amount of restitution VSP seeks. (AB-21-22.) Fox speculates that "few private practice optometrists can successfully operate" without being VSP doctors, suggesting that her termination from VSP would be economically harmful for her practice. (AB-1.) The law is clear, however, that monetary harm does not constitute "irreparable harm." *L.A. Mem'l Coliseum*, 634 F.2d at 1202.

### 4. Potential future Data Bank reporting provides no basis for finding current irreparable harm.

The district court never even mentioned Fox's other purported irreparable harm: that VSP might report an adverse outcome to the National Practitioner or Healthcare Integrity and Protection Data Banks. (AB-64; 2-ER-90; 3-ER-312-14.) With good reason. First, such harm is purely speculative, falling far short of demonstrable irreparable harm. *Herb Reed Enters. v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249-50 (9th Cir. 2013).

Second, VSP established that it does not report to the Data Banks until after the entire FHP is exhausted, including any arbitration, and thus has made no report about Fox. (3-ER-230-31, 328-30.)

The court also noted that Fox would be partly to blame for any adverse consequences from VSP's audit findings, having made "available to the world" details about the audit by filing her complaint. (3-ER-330.)

### C. Fox Has No Likelihood of Success on the Merits.

#### 1. Section 1300.71.38 does not apply to the FHP, nor does the FHP violate the regulation.

VSP explained why the core of Fox's case—that Section 1300.71.38 applies, and the FHP violates that regulation—is wrong as a matter of law. (AOB-14-20.) Fox fails to refute this.

### a. The disputes covered by the FHP are not covered by Section 1300.71.38.

Fox acknowledges that VSP has two different dispute resolution procedures—one for certain specific "provider disputes" within the definition of Section 1300.71.38 and another, the FHP, which applies to "VSP's imposition of any applicable disciplinary action." (AB-19; 2-ER-110.) Fox argues the FHP is subject to the requirements of Section 1300.71.38 because claims arising from VSP's imposition of discipline *also* fit within the definition of "provider disputes." (*Id.*) Fox is wrong.

Fox first argues that the definition of "provider disputes" does not distinguish disputes "based on how they came about." (AB-20.) This ignores the substance of what Fox is actually disputing. As VSP has shown (AOB-15-17), Fox challenges, for example, the auditors' factual findings, the decision to terminate her as a network provider, the statistical validity of VSP's calculation of restitution, that she submitted false or misleading claims, and limitations period. (AOB-15-17; 3-ER-371.) These do not fit within Section 1300.71.38(a)(1)'s definition "provider disputes."

Fox's additional "disputed issues" merely confirm that the disputes at issue are not "provider disputes." These "disputed issues" challenge VSP's factual findings and ultimate *post-payment* determination that she should not have been paid for certain services

10

and materials, and VSP's method of calculating restitution. (AB-21-22.) In sum, Fox's disputed issues are no more than merely disputes about a "demand for repayment" or the "denial or adjustment of claims," and exceed the definition of "provider disputes" covered by Section 1300.71.38.

### b. VSP's FHP does not violate Section 1300.71.38.

VSP explained that its FHP does not violate Section 1300.71.38's prohibition on arbitration. (AOB-17-20.) Fox responds that VSP's position does not account for the second step of the two-step FHP, which consists of arbitration, and erroneously relies on criteria for what constitutes "arbitration" articulated in *Cheng-Canindin v. Renaissance Hotel Associates*, 50 Cal. App. 4th 676 (1996). (AB-22-25.) Fox's arguments do not rebut VSP's demonstration of legal error.

First, nothing in Section 1300.71.38 prohibits arbitration as an optional, subsequent appellate venue through which the decision of a non-arbitration tribunal can be reviewed. VSP raised this issue below, and neither the court nor Fox disagreed. (1-ER-6-7; 3-ER-300-01.)

Second, Fox's attempt to distinguish *Cheng* fails. Fox argues *Cheng* did not decide that a dispute resolution process had to be binding to be considered arbitration. (AB-23.) This is demonstrably wrong. *Cheng* addressed two issues: (1) what constitutes an

11

"arbitration" under California law, and (2) whether the dispute resolution procedure at issue fit within that definition. *Cheng*, 50 Cal. App. 4th at 684-93. *Cheng* distilled a number of authorities into its criteria for "arbitration," concluding that "a dispute resolution procedure is not an arbitration unless there is a third party decision maker, a final and binding decision, and a mechanism to assure a minimum level of impartiality …." *Id.* at 687-88.

*Cheng* went on to find that the procedure at issue was *not* arbitration because there was no third-party decisionmaker, no mechanism to ensure impartiality, *and* because the parties did not intend the "procedure to have the effect of binding arbitration." *Id.* at 689-91. *Cheng* is authority for exactly the reason why VSP cites it— the standard for what constitutes arbitration. Because the first step of the FHP—a hearing before a Fair Hearing Panel—does not result in any binding decision if disputed further, it does not qualify as arbitration, and so does not violate Section 1300.71.38. As to the necessity of an impartial third-party decisionmaker, Fox's own complaint alleges that, in her view, the Panel is neither a third party nor impartial. (2-ER-38.)

Fox nonetheless argues that even though Panel decisions are non-binding, they still count as "arbitrations," citing *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998). (AB-24-25.) VSP already distinguished *Wolsey*, including that *Wolsey* was deciding an

12

issue that is distinct from whether a dispute resolution mechanism constitutes "arbitration" under Section 1300.71.38, and that it is unclear whether the same criteria applied in *Wolsey* would apply. (AOB-18-19.) Fox failed to address these key differences.

Further, even under *Wolsey*'s definition of arbitration under the FAA—an agreement (1) "to submit a dispute for decision by a third party," and (2) "not to pursue litigation until the process is completed"—the first step of the FHP does *not* meet this criteria. (AOB-19-20.) This is because there is a second step of the FHP that must be completed before litigation could be pursued.

Because the FHP's first step—a hearing before a fair hearing panel—does not constitute "arbitration," it does not violate Section 1300.71.38, and nothing in that regulation prohibits the second step, optional appellate review process by arbitration contained in the FHP. Therefore, the court erred in concluding that Fox demonstrated a likelihood of success of establishing the FHP violates Section 1300.71.38.

### 2. The Federal Arbitration Act preempts Section 1300.71.38 and no reverse-preemption exception saves the regulation.

Fox acknowledges the FAA preempts Section 1300.71.38 unless it fits within the McCarran-Ferguson Act's reverse-preemption exception for laws enacted "for the purpose of regulating the business

of insurance." (AB-25.) Although Fox characterizes this question as a "seriously disputable issue[]" (AB-25) because no appellate court has addressed this specific question, no precedent supports Fox's extension of the McCarran-Ferguson exception to a law like Section 1300.71.38, which regulates the relationship between an insurance company and its *providers*, rather than the relationship between an insurance company and its *insureds*. As VSP highlighted, the courts that have considered whether to apply the preemption exception to state laws affecting rights of persons *other than* policyholders, including providers, have expressly refused to do so. (AOB-32-34, citing *Fredericksburg Care Co. v. Perez*, 461 S.W.3d 513 (Tex. 2015) and *Int'l Ins. Co. v. Duryee*, 96 F.3d 837 (6th Cir. 1996).)

Fox completely ignores this precedent. Instead, Fox argues that *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205 (1979) and *Union Labor Life Insurance Co. v. Pireno*, 458 U.S. 119, 126 (1982) "do not apply"; that Section 1300.71.38 directly or indirectly regulates insurance contracts; and that providers are assignees who "step into the shoes" of an insured. These arguments lack merit.

14

> **a. Whether an activity is "the business of insurance" under McCarran-Ferguson is relevant to whether a law was enacted "for the purpose of regulating the business of insurance."**

Fox attempts to minimize the relevance of the factors articulated in *Royal Drug* and *Pireno* for determining what constitutes the "business of insurance" (the second clause of 15 U.S.C. § 1012(b)) to the determination of what laws fall into the category of being "enacted for the purpose of regulating the business of insurance" (the first clause of 15 U.S.C. § 1012(b)), by misstating VSP's position.

VSP has never argued the tests are the same. VSP recognizes that the scope of what constitutes a law "enacted for the purpose of regulating the business of insurance" is broader than what constitutes "the business of insurance." (AOB-28-29.) Nor, as Fox asserts, have courts stated that the *Pireno* and *Royal Drug* factors "do not apply" to the analysis of whether a law was enacted for the purpose of regulating the business of insurance. (AB-27.) To the contrary, the cases Fox cites as rebuking *Pireno* and *Royal Drug* actually use those factors in their analysis. *See U.S. Dept. of Treasury v. Fabe,* 508 U.S. 491, 500-06 (1993); *Smith v. PacifiCare Behavioral Health of Cal.*, 93 Cal. App. 4th 139, 159-60 (2001) (*Pireno*'s factors are "considerations to be weighed in determining whether a state law regulates insurance" and applying the factors), *citing UNUM Life Ins. Co. v. Ward,* 526 U.S. 358, 373 (1999)).

15

Other circuits also have applied the *Pireno* factors when determining whether a law was "enacted for the purpose of regulating the business of insurance" under the McCarran-Ferguson exemption to preemption. *See McKnight v. Chicago Title Ins. Co.*, 358 F.3d 854, 858-59 (11th Cir. 2004) (Georgia law prohibiting arbitration provisions between insurance companies and *insureds* constituted a law regulating the business of insurance, discussing the *Pireno* factors); *Standard Sec. Life Ins. Co. v. West*, 267 F.3d 821, 823-24 (8th Cir. 2001) (same, for similar Missouri law). And it makes sense as a logical first step in the inquiry of whether a law regulates the business of insurance that it first be determined whether the conduct affected *is* the "business of insurance." *See SEC v. National Securities*, 393 U.S. 453, 457 (1969) (statute aimed at protecting stockholders' interests was "not a state attempt to regulate 'the business of insurance' as that phrase" is used by McCarran-Ferguson).

Thus, Fox and the district court are simply wrong in concluding that the *Pireno* factors do not apply, and that *Pireno* and *Royal Drug* are irrelevant. (AOB-22-31.)

### b. Section 1300.71.38 does not regulate VSP's performance of an insurance contract.

Fox next argues that Section 1300.71.38 fits within the McCarran-Ferguson Act's exception because it is a law "aimed at

protecting or regulating the performance of an insurance contract," which the *Fabe* court, in a starkly different context, said was within the Act's definition. (AB-30-33.) Fox analogizes Section 1300.71.38 to the laws at issue in *Fabe* and *Smith*. But those laws are distinguishable from Section 1300.71.38 in a critical and determinative way: they expressly applied to the relationship between the insurance company *and the insured*—the very focus of the McCarran-Ferguson Act—*not* the relationship between an insurance company and a third party, like a medical provider. *See Fabe,* 508 U.S. at 505-06 (analyzing whether an Ohio statute that prioritized distributing "the insolvent insurer's assets *to policyholders* in preference to other creditors" regulated the business of insurance) (emphasis added); *Smith,* 93 Cal. App. 4th at 159-60 (analyzing whether a California statute mandating certain disclosures in arbitration agreements between healthcare service plans *and policyholders* regulated the business of insurance).

Fox argues that *Fabe* should be read more broadly to sweep into the definition of laws enacted for the purpose of regulating the business of insurance—not just laws that ensure *policyholders* are paid in accordance with their insurance contracts, but that relate to the payments by insurance companies to *medical providers* in accord with the *providers'* contracts with the insurance companies. (AB-30.) There is no precedent for such a broad reach, and courts have

17

expressly rejected attempts to extend McCarran-Ferguson's preemption exemption to laws affecting the rights of persons or entities *other than* policyholders. *See Fredericksburg,* 461 S.W.3d at 526-28; *Duryee,* 96 F.3d at 839-40; see also AB-31-34. Fox ignores this.

Further, there is no issue about VSP's performance of its contracts with its policyholders. Here, VSP policyholders went to Fox for services. Policyholders obtained the benefits to which they were entitled under their insurance contracts with VSP. Fox, however, improperly billed VSP for services and materials that she herself did not provide. In fact, Fox allowed a non-licensed person, under the guise of being a licensed optometrist, to provide the vision care services and knowingly billed them to VSP in her name. Had Fox herself provided the services, VSP would not have had to discipline Fox. But either way, the policyholders received the benefits they were entitled to under their VSP contracts. Fox's fraud in submitting claims to VSP and her violation of the terms of her VSP contract is not a concern of the policyholders and has nothing to do with VSP's performance of its contracts with its insureds. *Royal Drug,* 440 U.S. at 214 ("[s]o long as that promise [of the services the insurance policy covers] is kept, policyholders are basically unconcerned with arrangements made between [the insurance company] and

18

participating" medical providers).[2] Thus, Fox's attempt to stretch
*Fabe* to reach payment of claims to *anyone*, versus payments of
claims to *policyholders*, "goes too far." *See Fabe,* 508 U.S. at 508-09.

### c. Fox's "assignee"/"steps into the shoes" argument is unsupported and does not save Section 1300.71.38 from preemption.

Because all applicable authority has found that laws enacted for
the purpose of regulating the business of insurance are laws affecting
the insurance contract between an insurance company and its
*policyholders*, Fox resorts to arguing that medical providers are
assignees of policyholders who "step into the shoes" of policyholders
for the purposes of receiving payment on claims. Therefore, Fox
argues, laws that apply to claim disputes between insurance
companies and *providers* should also come within the ambit of the
McCarran-Ferguson preemption exception. (AB-34-41.) But Fox cites
no legal authority to support her argument, instead (again) offering
exclamation points instead of legal citations. In fact, the law is
contrary.

---

[2] Fox also argues that an insurance company's promise to pay for
services that policyholders receive under their insurance contracts
"clearly contemplates that the claim submission and payment will
come from and be to the provider on the insured's behalf." (AB-32-
33.) Setting aside that Fox's assertion has no factual support, no
insurance contract would allow payment for a medical provider's
fraudulent or improper activities, such as using unlicensed persons to
render services.

The Supreme Court has definitively recognized that the critical difference between an insurance company's contracts with its providers versus those with its insureds places the former *outside* of McCarran-Ferguson's definition of the "business of insurance." *See Royal Drug,* 440 U.S. at 214; *Pireno,* 458 U.S. at 132.

Nor is it accurate to say that medical providers "step into the shoes" of insureds for the purposes of all disputes relating to payment for services. An insurance contract between an insurance company and a policyholder typically concerns what medical services will be covered, how much money (if any) the policyholder will have to contribute for those services, and whether or not medical providers need to be "in-network" to be covered. *See* Cal. Health & Saf. Code § 1345(r) ("'Plan contract' means a contract between a plan and its subscribers or enrollees or a person contracting on their behalf pursuant to which health care services, including basic health care services, are furnished"). If a policyholder visits an "in-network" doctor for covered services, then the policyholder's concern is whether she can receive those services at the expected cost to her. A policyholder is *not* concerned with whether or how much a *provider* is paid under the *provider's* independent contract with the insurance company, or disputes over the provider's allegedly fraudulently billed services. *Royal Drug,* 440 U.S. at 214; *Pireno,* 458 U.S. at 132.

20

Fox's "assignee" argument has no application to whether or not Section 1300.71.38 regulates the business of insurance. The only case she cites for her argument, *Blue Cross of California v. Anesthesia Care Associates,* 187 F.3d 1045 (9th Cir. 1999)—a case dealing with ERISA preemption, not the McCarran-Ferguson Act's preemption exception—directly undermines Fox's argument that the McCarran-Ferguson preemption exception should apply to laws governing contracts between insurance companies and medical providers.

First, the relevance of a medical provider being an "assignee" of a policyholder is discussed in the context of ERISA lawsuits, not cases applying the McCarran-Ferguson Act. Because medical providers are not "beneficiaries" under ERISA who have standing to sue insurance companies to receive payment on their claims under the statute, courts have held that providers have standing to sue under ERISA *only if* their patients themselves had a right to receive monetary payment and assigned it to the providers. *See DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz.*, 852 F.3d 868, 874 (9th Cir. 2017); *Blue Cross,* 187 F.3d at 1051. Fox cites no case supporting the relevance or application of her "assignee" argument in the McCarran-Ferguson Act context.

Further, even if Fox's assignment argument had any merit, there is no evidence that Fox (or any other provider) was the assignee of policyholders' right to benefits. And for good reason. As stated

21

above, healthcare service plans like VSP contract with their enrollees to guarantee them the provision of the health services themselves. By contrast, plans contract directly with providers, like Fox, to provide the services. There is nothing for the patient to "assign." Rather, the right to payment is set forth in the NDA between VSP and Fox. (2-ER-108.)

Section 1300.71.38 does not protect or regulate the performance of an insurance contract. Rather, it regulates the performance of a contract between an insurance company and a medical provider. This does not fit within the meaning of a law enacted "for the purpose of regulating the business of insurance" under the McCarran-Ferguson preemption exception. Section 1300.71.38 is therefore preempted by the FAA, meaning that Fox has no likelihood of success on the merits.

### 3. Fox cannot show the FHP is unconscionable.

#### a. Fox cannot demonstrate the FHP is procedurally unconscionable.

The district court based its procedural unconscionability determination on Fox's declaration that VSP's contract is a non-negotiable, take-it-or-leave-it proposition. (AB-41.) VSP recognizes it holds a superior bargaining position, but that does not make its contracts per se procedurally unconscionable. Unconscionability requires that the weaker party has no meaningful choice but to sign the contract "as is" or with material terms essentially hidden. *Baltazar*

*v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243-45 (2016). Fox has not demonstrated that the NDA, which incorporates the FHP, meets this standard.

The key problem with the court's ruling is that Fox offered no evidence that the NDA or FHP are "non-negotiable take-it-or-leave-it proposition[s]," beyond her own, untested assumptions, speculation, and hearsay. (*See* 2-ER-86-87, 91-93.) The only evidence was directly to the contrary, and was unrefuted. Fox did not dispute that she was given ample time to review the NDA, and that she could have, but did not, request and obtain a copy of the FHP before signing her current NDA or any of her multiple prior NDAs. (3-ER-226-27.) Nor did Fox dispute that she, unlike other applicants, did not propose any changes to her NDA or the FHP, nor that VSP has actually accepted proposed changes to the NDA made by other applicants. (2-ER-91-93; 3-ER-226-27.) Fox admittedly did not even read her NDA, yet she assumes she could not have changed its terms. (2-ER-87, 91-93.) There is no basis to conclude that Fox lacked bargaining power simply because she never even tried to bargain. (AOB-36.) The actual—and only—facts in the record refute Fox's assumptions. (3-ER-226-27.) Fox failed to prove that the NDA was "oppressive" in any sense.

Nor did Fox demonstrate "surprise" supporting procedural unconscionability. Fox's argument below alleged procedural unconscionability and "surprise" for the arbitration provision in the

23

*NDA.* (2-ER-76-77.) Now, she argues for unconscionability "entirely on the arbitration rules found only in the FHP"—not the NDA. (AB-44, 46 ["Fox does not claim surprise based on the presence of the alternative dispute resolution procedures in the NDA"].) This tactical shift on appeal is required because the arbitration agreement in her last three NDAs has been conspicuous. (2-ER-110, 226-27; 3-ER-241-42, 257.) The FHP—which Fox does not dispute was available to her, had she asked—is referenced in the NDA's clearly marked "Binding Arbitration" section. (*Id.*) *See Serafin v. Balco Props.,* 235 Cal. App. 4th 165, 179 (2015) (rejecting contention that failure to provide plaintiff with a copy of AAA rules referenced in the arbitration agreement was procedurally unconscionable).

Fox also now changes her procedural unconscionability argument because the cases cited by VSP undermine her claim. (AOB-37-40.) Cases like *Baltazar* and *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017), found that it was a "critical fact" that the parties alleging procedural unconscionability focused on the arbitration rules incorporated into a contract by reference rather than the procedural unconscionability of the contract itself. (AB-44.)

Fox argues that these cases involved the American Arbitration Association's rules, which are "widely known and readily available to anyone online," whereas the FHP is "custom drafted" and "not readily available." (AB-45-46.) But the ubiquity of AAA's rules was not a

24

dispositive factor in *any* of the opinions. Indeed, in *Poublon*, 865 F.3d at 1258, this Court found no procedural unconscionability even where custom drafted rules (available only internally) were incorporated by reference but not attached to the employment agreement.

Moreover, VSP provided Fox with a number to call when she was sent the NDA if she wanted more information, and the FHP was available on VSP's Network Doctor portal before this dispute ever arose. (2-ER-86, 113; 3-ER-227.) Fox's failure to seek a copy of the FHP cannot equate to VSP "hiding" anything.

### b. Fox cannot demonstrate the FHP is substantively unconscionable.

Fox argues that VSP's arbitration process is one-sided. Yet neither Fox nor the district court points to a single provision in the FHP that is non-mutual or "overly harsh"—the quintessence of substantive unconscionability. *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015).

**There is no one-sided "free peek" in VSP's favor.** Fox argues that the FHP's "Good Faith Effort to Resolve the Dispute" provision unfairly imposes an obligation on doctors to reveal their arguments and defenses. (AB-48-49.) First, the duty to engage in good faith settlement efforts does not necessarily require revealing a doctor's claims and defenses. Second, any "free peek" is mutual. When settlement discussions occur, the doctor already has had a "free peek"

25

into VSP's claims through its detailed Adverse Action Letter. (2-ER-230, 268-75.) And the duty to negotiate in good faith applies equally to both the doctor and VSP. Finally, Fox's concern about an impartial "auditor" is wrong because there is no requirement that settlement be moderated by any "auditor."

**Confidentiality is mutual and does not unfairly favor VSP.**
In *Poublon,* this Court rejected Fox's argument that the confidentiality provision in the FHP is substantively unconscionable by giving an unfair advantage to repeat players. *Poublon*, 846 F.3d at 1265-66. Fox struggles against *Poublon*, arguing that neither this Court nor the court in *Sanchez v. Carmax Auto Superstores Cal.*, 224 Cal. App. 4th 398 (2014), which *Poublon* followed, "considered either the narrow scope of the confidentiality provision in *Woodside [Homes of Cal. v. Super. Ct.*, 107 Cal. App. 4th 723 (2003)], or *Woodside's* warning that limited the holding to when the advantage gained by the provision is 'wholly collateral' to a fair resolution of the matter." (AB-53.) But both *Sanchez* and *Poublon* already expressly rejected the precise argument Fox makes—that a confidentiality provision gives an employer an unfair institutional advantage because it prevents employees from discovering evidence from each other. Thus, *Sanchez* and *Poublon* are on point. *Woodside* is not because it did not even consider a challenge to a confidentiality provision on this basis.

26

Even if *Woodside* applied, a confidentiality provision *is* collateral to fairly resolving any dispute. Resolution will rest on facts pertaining to each individual doctor. Any perceived procedural advantage can be overcome by doing precisely what Fox has done— hiring an attorney who "regularly represent[s] optometrists in connection with VSP audits" who is "very familiar with the VSP procedures for dispute resolution." (2-ER-139.)

Fox also argues that the FHP's confidentiality provision is broader than the provision in *Poublon*. (AB-50-52.) Fox misrepresents the scope of the provisions. Although Fox claims that the provision in *Poublon* was "limited to the arbitration proceeding itself," that limiting language is not there: the provision states "*[a]ll aspects of the arbitration*, including, without limitation, the record of the proceedings, are confidential and shall not be open to the public." *Poublon,* 846 F.3d at 1265 (emphasis added).

The FHP's confidentiality provisions state that the arbitration proceedings themselves "shall be closed to persons that are non-essential" (2-ER-128, 135-36) and prohibit parties from disclosing "Confidential Information" to third parties except in certain circumstances. "Confidential Information" is defined as "[a]ll information exchanged between the parties prior to, during or

27

otherwise prepared for the hearing." (*Id.*)[3] Certainly, "all aspects of the arbitration"—the scope of the *Poublon* confidentiality provision— necessarily would and must include the identical information protected by the FHP. Thus, Fox's argument that *Poublon's* confidentiality provision is narrower than VSP's is false.

Fox also claims that, under the confidentiality provisions, VSP is permitted to retain Confidential Information, but the doctor is not. (AB-51.) But only the decisionmakers—the members of the Fair Hearing Panel or their attorneys and the arbitrator—are relieved from having to destroy Confidential Information. VSP is not. (2-ER-128, 136.)

Finally, Fox argues that VSP has no justification for ensuring that the FHP remains confidential, other than to protect its institutional knowledge and gain a litigation advantage. (AB-50.) But no justification is needed because the confidentiality obligation is bilateral. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 117-18 (2000) ("some reasonable justification" must

---

[3] Fox cites to a different, more general confidentiality provision in the FHP that says "[a]ll facts, records, data and information acquired in preparation for a hearing or during the course of a Hearing or Arbitration" shall be maintained in strict confidence. (AB-50-51.) This provision does not define "Confidential Information" and is more general than the confidentiality requirements in the specific sections of the FHP. The more specific provision governs. *Idaho v. Shoshone-Bannock Tribes*, 465 F.3d 1095, 1099 (9th Cir. 2006).

exist for one-sided provisions). Further, the justification is easy—to protect the privacy rights of the doctor, patients, VSP's auditors, and any witnesses, and to prevent the exposure of alleged wrongdoing that Fox herself claims to fear.

**The settlement discussion provision is bilateral.** The pre-arbitration settlement discussion provision applies to both VSP and Fox; either one can be the "Claimant" required to make a settlement proposal. (AOB-43-36.)

Whether this provision differs from California Code of Civil Procedure section 998 and Federal Rule of Civil Procedure 68 has no bearing on whether the provision is substantively unconscionable. Nor does Fox's argument relating to the illegality of redefining the definition of "prevailing party" under California Civil Code section 1717 have any relevance; that statute, which only applies to an action "on a contract" and fees incurred to "enforce that contract," does not even apply in this case.[4]

Fox also objects to the $15,000 fee cap, but cites nothing that makes such a cap improper or unconscionable. Fox argues only that

---

[4] *Exxess Electronixx v. Heger Realty Corp.*, 64 Cal. App. 4th 698 (1998) and *Carmona v. Lincoln Millennium Car Wash*, 226 Cal. App. 4th 74 (2014), are inapplicable. *Electronixx* only says that when there is an action on a contract and that contract allows for attorneys' fees, section 1717 applies. *Carmona* determined that a facially one-sided fee provision did not become mutual and less unconscionable simply by virtue of section 1717.

this provision *looks* mutual, yet is not, because Fox says VSP does not actually incur any fees because it has in-house counsel. (AB-56.) This ignores California Supreme Court precedent saying that a company is entitled to attorneys' fees for work performed by its in-house attorneys. *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1093-94 (2000).

**Limitation on direct participation by attorneys in the hearing before the Fair Hearing Panel.** Fox argues that the FHP's limitation on direct participation by attorneys to a five-minute closing argument at the hearing before the Fair Hearing Panel, and that the parties themselves (rather than attorneys) must cross-examine each other's witnesses, benefit VSP because VSP "could" choose an in-house counsel to cross-examine witnesses. (AB-58-59.) Fox provides not support for this argument, and in fact, under the FHP rules, VSP has never allowed an in-house counsel to cross-examine witnesses. This is pure speculation. Fox also downplays that she is entitled to consult with her attorney during the hearing. (2-ER-127.) And she ignores that there is no limitation on the participation of attorneys at an arbitration. This provision is mutual. There is a legitimate reason for limiting attorney-participation at the hearing: the hearing is intended to provide an expedited dispute resolution procedure; attorney participation can often impede this goal.

Because Fox has not met her burden of showing procedural or substantive unconscionability, the court erred in concluding that she

had demonstrated a likelihood of success on the merits. (Moreover, even if any provisions were unconscionable, such provisions could be severed from the FHP, leaving the substance of the procedures intact. *See* Cal. Civ. Code § 1670.5; *Dotson v. Amgen, Inc.,* 181 Cal. App. 4th 975, 986 (2010).)

### D. The balance of hardships and public interest factors favor VSP.

Though minor elements here, both the balance of hardships and public factors favor VSP's position. As detailed already, this Court has held that incurring expenses to participate in an arbitration is not harm warranting injunctive relief. *Camping*, 915 F.2d at 1349. And to the extent that spending time and money on an arbitration is a hardship, it is borne equally.

VSP's litigation opponents—including Fox—have a penchant for citing other VSP cases. (E.g., AB-63; 2-ER-140 [Fox's counsel cites to other cases he is handling against VSP]; 3-ER-338, 343-44 [discussion of counsel's other cases at the hearing].) Thus, the injunction in Fox's case undoubtedly will be used in other VSP litigations. While Fox attempts to dismiss this concern as "wholly speculative" and unsupported, this Court need only look at the record in this case as evidence that VSP's concern is well-founded. The injunction here will interfere with VSP's use of its mandatory dispute resolution process with other doctors, which bears upon the public

interest factor as well: If injunctions prevent VSP from using its FHP, then VSP (a nonprofit entity) faces increased litigation costs, which ultimately are paid by VSP's policyholders nationwide.

Fox also argues that VSP suffers no harm from any delay. (AB-65.) This overlooks VSP's interest in recouping the money Fox wrongfully obtained before she has time to dissipate those funds. Delay will likely make it harder for VSP to ever recover from Fox.

Fox further argues that VSP hearings can take up to six months to schedule. (AB-65.) Ignoring that this assertion is contradicted by the record (Fox was originally set for a hearing in November 2016, which was continued at her counsel's request to the same week she sought preliminary relief in February 2017), finishing this litigation in the district court and accounting for any potential appeals will take far longer than six months. Fox ultimately returns to her irreparable harm arguments (AB-65), but these points have already been addressed: Spending resources for arbitration is a hardship for both sides, and Fox's alleged Data Bank reporting hardship goes nowhere.

Regarding public interest, Fox attempts to portray this dispute as simply one between herself and VSP. But the issues here have a more far-reaching effect. As discussed above, every doctor whom VSP attempts to discipline will attempt to impede and delay the FHP, like Fox is doing, increasing VSP's legal costs and policyholder premiums.

## III.    CONCLUSION

This Court should reverse the preliminary injunction.

Dated: June 5, 2017                              Respectfully submitted,

By: *s/Andrew H. Struve*
       *Attorneys for Appellant*
       Vision Service Plan

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and contains **6,999** words, exclusive of the corporate disclosure statement, the table of contents, the table of authorities, as counted by the 2003 Microsoft Word word-processing program used to generate this brief.

I certify that this brief complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with a 14-point Times New Roman font.

Dated: June 5, 2017                    Respectfully submitted,

                              By: *s/Andrew H. Struve*
                                  *Attorneys for Appellant*
                                  Vision Service Plan

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Appellant's Reply Brief with the Clerk of the Court for the United States Court of Appeal for the Ninth Circuit by using the appellate CM/ECF system on June 5, 2017. All participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

                              By: *s/Bess Hubbard*

318739606.2

34